BREITENSTEIN, Circuit Judge.
In this bankruptcy proceeding the receipts from the settlement of a preference suit were distributed in part to the bankrupts and in part to the trustee for acting as his own attorney in the preference suit. The bankruptcy court approved the settlement which was based on the amount needed to satisfy anticipated creditors’ claims and ordered the distribution after it had sustained the trustee’s objections to all claims filed against the estate. The district court affirmed the bankruptcy court, holding that the bankruptcy court had not abused its discretion. We reverse.
Harold and Lala Ocobock operated a machine shop in Republic County, Kansas. Security National Bank of Superior, Nebraska (Bank), held a security interest on the property and in January, 1975, obtained $34,000 from a public auction of the business equipment and inventory. On March 3, 1975, the Ocobocks filed a voluntary petition in bankruptcy and were discharged on July 18, 1975.
On March 26, 1975, Dan E. Turner was appointed trustee of the bankruptcy estate. Two claims were filed against the estate. One was for the State of Kansas. The second, of Murrell Conzelman, was in excess of $17,000 with real estate security valued at $5,000. Bank filed no claim but was listed as a creditor on the bankrupts’ schedules.
On petition of the trustee, Turner, the bankruptcy judge on December 15, 1976, appointed Turner as his own attorney. Turner then sued the Bank in the United States District Court for Kansas asserting that the Bank had obtained a preference by its receipt of the funds derived from the January, 1975, auction of the Ocobock machine shop. The case was transferred to the District of Nebraska. By counsel’s letter of February 17, 1977, Bank offered to pay $5,000 in settlement of the preference suit. The trustee and the bankruptcy judge rejected the offer on the ground that the amount was inadequate to pay the administrative expenses and compensate the creditors. On April 26, Bank’s lawyer sent to the trustee the Bank’s check for $8,000 and a “Release and Settlement Agreement” in which Bank agreed to forego the right to file any claim against the bankruptcy estate. The agreement required approval by the bankruptcy court and execution by the trustee.
On May 4, 1977, the trustee signed, and on May 9, filed, objections to the Conzelman and Kansas claims. As to Conzelman, the trustee said that the security for the claim had been “reclaimed” and “possibly” sold by Conzelman and that no amended claim had been filed for any deficiency. With regard to the Kansas claim, the objection said that the trustee was informed that the claim had been paid. Notice of the objections to the Conzelman and Kansas claims was not sent to the Bank or its counsel.
Also on May 9, the trustee filed (1) an application for approval of the settlement with the Bank, (2) an application for allowance of attorney fees to himself in the amount of $1,600, and (3) a final report showing a balance on hand of $8,436.84. A “Notice of Meeting of Creditors or Hearing,” covering the mentioned items was executed and mailed on May 9. This notice was sent to the Bank but not to its counsel.
On May 31, the bankruptcy judge by order sustained the objections to the Conzel-man and Kansas claims and approved the requested attorney fees, the final report of the trustee and the award of the surplus to the bankrupts. On June 1, the trustee executed the settlement agreement and it was approved by the bankruptcy judge on June 3. On June 10, Bank’s counsel called the trustee and learned for the first time of the sustained objections to the Conzelman and Kansas claims and the disbursement of surplus. On June 10, Bank filed notices of appeals to the district court from the May 31 and June 3 orders of the bankruptcy judge. The district court affirmed the or *1360 ders. It said that the Bank had not demonstrated “any procedural or substantive legal error,” that the equitable relief is discretionary, and that the bankruptcy court did not abuse its discretion.
Bank argues that the approval of the settlement was legal error because of the absence of other creditors. Moran Brothers, Inc. v. Yinger, 10 Cir., 323 F.2d 699, 701, sets forth the essential elements of a voidable preference and includes as one element the recovery of a greater percentage of the creditor’s debt than will be received by other creditors of the same class. See also Palmer Clay Products Co. v. Brown, 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 and Keenan Pipe and Supply Co. v. Shields, 9 Cir., 241 F.2d 486, 490. In the instant case, there were no other creditors, but the effect of the noted principle is negated by the compromise settlement.
The approval of the compromise of a doubtful claim is within the discretionary power of the bankruptcy court and its action may be disturbed only when abuse of discretion clearly appears. Scott v. Jones, 10 Cir., 118 F.2d 30, 32. The principle applies both to the district court and to the court of appeals. See Florida Trailer and Equipment Co. v. Deal, 5 Cir., 284 F.2d 567, 571, and cases there cited. Even though the scope of review is limited, a reviewing court will set aside a compromise when “it obviously achieves such an unjust result as to amount to an abuse of discretion.” In re Albert-Harris, Inc., 6 Cir., 313 F.2d 447, 449.
In discussing discretion, the Supreme Court has said, Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520:
“The term ‘discretion’ denotes the absence of a hard and fast rule. (Citation omitted). When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.”
“A bankruptcy court is inherently a court of equity.” American Emp. Ins. Co. v. King Resources Co., 10 Cir., 556 F.2d 471, 478. See also Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281. “There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.” Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197; see also Matter of Seats, 4 Cir., 537 F.2d 1176, 1177-1178.
The result in this case is unjust. The trial court said that it “cannot pretend to be pleased by the outcome of the bankruptcy proceedings” and “reluctantly” affirmed on the ground that Bank had shown no abuse of discretion. In so holding the district court said that the bankruptcy court “did not abuse its technical discretion” because (1) Bank prepared the settlement agreement and did not protect itself against the contingency which developed, (2) Bank received notice that the estate had surplus funds and did not advise its counsel, and (3) Bank did not request an extension of time to file a claim against the surplus.
The conduct of the Bank must be balanced against the conduct of the bankruptcy judge and the trustee. The duty of the Bank to investigate and protect must be balanced against the duty of the bankruptcy court to do equity and the failure of the trustee to notify his opposing counsel in the preference suit of the true facts.
The February 17 letter of Bank’s counsel to the trustee, offering settlement, stated Bank’s understanding that the claims amounted to approximately $8,700 and ofr fered $5,000. The trustee discussed the offer with the bankruptcy judge and rejected the offer. Bank then increased its offer to $8,000, and by its April 26 letter sent a check for that amount to the trustee with an agreement to forego the right to file any claim against the estate. These events indicate that the settlement amount was based upon an understanding that there were allowable creditor claims.
The bankruptcy court’s approval of the settlement came on June 3, three days after the bankruptcy court sustained the trustee’s objections to the only two claims *1361 which had been filed. Both the bankruptcy-court and the trustee knew, but Bank did not know, that there were no allowable creditor claims, thereby removing the basis for the settlement amount, and that there were no creditors claiming the surplus created by the settlement. The bankruptcy court and the trustee, with full knowledge of the position of the Bank and of the facts, took advantage of the situation and distributed to the trustee and to the bankrupts the surplus created by the settlement of the preference suit. The bankrupts received a windfall of over $6,000.
We deplore the manner in which the bankruptcy court and the trustee handled this matter and disapprove their actions. The result reached was neither right, equitable, nor just, and was an abuse of discretion.
Reversed with directions to vacate the May 31,1977 order of the bankruptcy court on the “Trustee’s Final Report and Final Meeting of Creditors,” to the extent that order awards attorney fees and distributes the surplus, and the June 3, 1977 order of the court “Approving Compromise Settlement,” and for such further proceedings as are appropriate in the light of this opinion.