**In re ZACHMAN HOMES, INC., Debtor,**

**ZACHMAN HOMES, INC., Plaintiff,**

v.

**William OREDSON and Robert A. Jensen, Defendants.**

Adv. No. 4–83–420.

Bankruptcy No. 4–83–1799.

United States Bankruptcy Court,
D. Minnesota.

June 21, 1984.

John Markert, West St. Paul, Minn., for debtor.

Thomas Walker, of Skogerboe & Skogerboe, Minnetonka, Minn., for defendants Oredson and Jensen.

Gerald Workinger, Minneapolis, Minn., for several secured creditors.

ORDER

MARGARET A. MAHONEY, Bankruptcy Judge.

This matter is before the Court on the motion of the Debtor to reconsider and/or amend an earlier Order of this Court dated April 25, 1984, which found certain transfers to not be preferences under 11 U.S.C. § 547(b). Based on the arguments and affidavits of counsel and the writings contained in the file, the Court hereby makes the following:

*Findings of Fact*

1. Defendants Oredson and Jensen obtained orders for judgment against Debtor Zachman via summary judgment in Hennepin County District Court on November 1, 1983. Judgments in favor of both Oredson and Jensen were docketed in Hennepin County on November 1, 1983. This Debtor filed for Chapter 11 relief on November 2, 1983.

2. The Hennepin County District Court judgment in favor of Jensen was for an amount of $8,700.00, which represented

past due rent owed Jensen by Zachman. The judgment in favor of Oredson was for $5,855.00 arising from rent owed to Oredson by Zachman.

3. At the time the State Court judgments were docketed in Hennepin County, the Debtor owned property in Hennepin County in which the Debtor had at least $1,000.00 in equity.

4. Had the State Court judgments not been docketed by Oredson and Jensen, they would have held at best unsecured claims against the estate of the Debtor.

5. This Court entered an Order on April 25, 1984, following a trial pursuant to 11 U.S.C. § 547. The April 25 Order determined that no preferential transfer had taken place through the docketing of the State Court judgments.

### Discussion

This case presents one narrow issue for consideration by the Court. That issue is the application of 11 U.S.C. § 547(b)(5) to the facts arising in this case.[1] That subsection states that any transfer is an avoidable transfer if such transfer "enables" the creditor who received the transfer to receive more than such creditor would receive if:

(A) the case were a case under Chapter 7 of this Title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this Title.

Section 547(b)(5) mandates the Court to make a balancing or a comparison between what the creditor would receive had the preferential transfers never been made, the Debtors filed a Chapter 7 liquidation, and the creditors received payments pursuant to the Chapter 7 distribution compared with what the creditors received via the preferential transfer.

Upon docketing in Hennepin County, the judgments obtained by Oredson and Jensen became liens against the real property of the Debtor in Hennepin County pursuant to M.S.A. § 548.09. They thus constitute "transfers" for purposes of § 547. The transfers, if preferential transfers, were so only to the extent of equity in the real property in the county where the judgments were docketed. Attachment of the judgment liens to the debtor's Hennepin County real property gives these creditors a secured claim at least to the extent of the equity in the property. In this case that means Oredson and Jensen received a transfer, allegedly preferential, to the extent of $1,000.00.[2] As such, the originally entirely unsecured claims of Oredson and Jensen become, in effect, bifurcated claims in that Oredson and Jensen now have secured claims of $500.00 each and unsecured claims for the remainder of the judgment debt exceeding the amount of equity in Hennepin County property owned by the Debtor.

The evidence presented at the earlier trial on this matter indicated that the Debtor had, at the time its petition was filed in bankruptcy, liabilities exceeding its assets in an amount of between $300,000 and $800,000. Such evidence clearly indicates that these creditors, as unsecured creditors, would receive less than 100 percent on the value of their unsecured claims had this matter been originally filed as a Chapter 7 petition and they had received payment pursuant to Chapter 7 distribution.

1. The parties do not contest the application of subsections (b)(1)–(b)(4) of Section 547. The "transfers" or docketing of the judgments, meet the statutory criteria of (b)(1)–(b)(4).

2. Whether Oredson's or Jensen's judgment was docketed first is not at all clear in this case. Counsel have treated the two judgments as one for the purposes of the trial. The copies of the judgments in the adversary proceeding file reveal that they were filed in the Hennepin County District Court within the same minute. The docket stamp on Jensen's judgment states it was docketed at 3:10 p.m. on November 1, 1983, while a handwritten addition to the file copy of Oredson's judgment states that it was docketed at 3:00 p.m. on November 1, 1983 in Hennepin County. The judgments were apparently given to the district court clerk at the same instant in time and were docketed serially. As such they would probably be treated as concurrent liens under Minnesota law. *Bagley v. McCarthy Bro. Co.*, 95 Minn. 286, 104 N.W. 7 (1905).

Against this as yet unknown value received on the claims must be compared another value. That value is what these creditors received through the preferential transfers. Section 547(b)(5) does not clearly indicate what the "enables" language of that subsection requires the Court to compare against this Chapter 7 distribution amount. A review of the legislative history of that section and the reported cases concerning that section convinces me that the proper value to be compared against the Chapter 7 distribution value in this case is the value determined by adding the secured amount of the claim, made secure by the preferential transfer, to the pro-rata amount which would have been paid on the unsecured portion of the creditors' claims had the Debtor filed for Chapter 7 liquidation on the day the petition in chapter 11 was filed. *Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936); *In re Abramson,* 715 F.2d 934 (5th Cir.1983).

*Palmer Clay Products, supra,* is instructive for present purposes. There, in determining whether a preferential transfer took place under the Bankruptcy Act, the Court stated:

"Whether a creditor has received a preference is to be determined, not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results. The payment on account of say 10% within the four months will necessarily result in such creditor receiving a greater percentage than other creditors, if the distribution in bankruptcy is less than 100%. For where the creditor's claim is $10,000, the payment on account $1000, and the distribution in bankruptcy 50%, the creditor to whom the payment on account is made receives $5500, while another creditor to whom the same amount was owing and no payment on account was made will receive only $5000. A payment which enables the creditor 'to obtain a greater percentage

of his debt than any other of such creditors of the same class' is a preference." 297 U.S. at 229, 56 S.Ct. at 451.

Applying the Court's analysis to be present case, the following becomes clear:

1. Payment to unsecured creditors on a Chapter 7 liquidation would be less than 100%.

2. At any level of hypothetical payment of less than 100%, these creditors were preferred to the extent that they received, through the transfers, the hypothetical liquidation payment plus $500. For example, using a 50% payout on Jensen's unsecured claim would entitle him to $4350 (plus the miniscule percentage increase caused by the addition of $1000 to unsecured creditors' pot). With the preference left intact, he would receive $4,100 on his unsecured claim plus $500 on the secured portion for a total payment of $4600. The same holds for Oredson at this level of payout and holds for both at any level of payout of less than 100%.

3. Therefore, the docketing of the state court judgments "enabled" these creditors to receive more than they would have received on a Chapter 7 liquidation had the transfers not taken place. See also, *In re Tonyan Const. Co.,* 28 B.R. 714 (B.C.N.D. Ill.1983); *In re Fulghum Const. Co.,* 7 B.R. 629 (B.C.M.D.Tenn.1980).

The (b)(5) language is directed at transfers which diminish the estate available for distribution upon a Chapter 7 liquidation. Any transfer which diminishes or depletes the bankrupt's estate may be seen as a transfer which enables a creditor to receive more than other creditors of equal status and therefore is a preferential transfer. *Barash v. Public Finance Corp.,* 658 F.2d 504 (7th Cir.1981). Attachment of a lien to real property is such a transfer as may diminish the bankrupt's estate. *In re Deel Rent-A-Car, Inc.,* 16 B.R. 873 (D.C.M.D. Fla.1982).

The Court, in determining whether the preferential transfer has occurred, should construct hypothetical situations comparing the distribution to the creditors at various

percentage levels of payback on the dollar for unsecured claims under a chapter 7 liquidation to determine whether the preferential transfer has indeed advanced the position of the allegedly preferential transferees. *Tonyan, supra; Palmer Clay, supra.* I am convinced the Debtor has made an adequate showing in both its affidavit and the evidence presented at the hearing to show that at any level of distribution to unsecured creditors of less than 100 percent on the dollar, these creditors have advanced their position at least to the extent of the equity in the Hennepin County property. Further, the Debtor has presented satisfactory evidence to the Court that 100 percent payout on the dollar of unsecured claims would be impossible in this case. Therefore, the docketing of the State Court judgments in Hennepin County constitute preferential transfers under 11 U.S.C. § 547(b). In that regard, the April 25th Order of this Court was in error and is hereby amended accordingly by this Order.

### Conclusion

Therefore, the docketing of the state court judgments on the day before bankruptcy was filed constitute preferential transfers to these creditors. No exception to § 547(b) appearing under these facts, the state court judgments are avoidable preferential transfers under 11 U.S.C. § 547(b).

### ORDER FOR JUDGMENT

The April 25, 1984 Order of this Court in the above case is hereby amended in accordance with this Order. The state court judgments obtained by defendants against this debtor are hereby avoided.

LET JUDGMENT BE ENTERED ACCORDINGLY.