In re Patricia A. UHLMEYER, Debtor.

James P. DUNLAVEY, Trustee, Plaintiff,

v.

Dana UHLMEYER and April Uhlmeyer and Patricia A. Uhlmeyer, as guardian of her children Dana Uhlmeyer and April Uhlmeyer, Defendants.

Bankruptcy No. B–85–057–PHX–GBN. Adv. No. 86–034–GBN.

United States Bankruptcy Court, D. Arizona.

Dec. 18, 1986.

---

Charles N. Vogel, Vogel & Wulfers, Scottsdale, Ariz., for plaintiff.

Franklin D. Coxon, Stanfield, McCarville, Coxon & Fitzgibbons, Casa Grande, Ariz., for defendants.

## MEMORANDUM OF DECISION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

### I

This matter is before me on the complaint of a Chapter 7 trustee seeking turnover from the debtor's two minor children of a one-half interest in a family residence located in Mesa, Arizona. 11 U.S.C. § 542(a), Rule 7001(1), *F.Bk.R.* Such an action is a core proceeding as that term is defined by the 1984 Bankruptcy Amendments. 28 U.S.C. § 157(b)(2)(E), (F), (H) and (O). Accordingly, a final judgment will be entered by this Court. § 157(b)(1). It is further noted no party has filed a timely motion objecting to this Court's core jurisdiction. § 157(b)(3). This memorandum of decision will serve as my findings of fact and conclusions of law. Rule 52(a), *F.R. Civ.P.*

### II

Prior to 1981, the debtor and her husband, John Norbert Uhlmeyer, purchased stock in the American Telephone and Telegraph Company ("AT & T stock") which, according to Mrs. Uhlmeyer, was held as custodian for their minor children, Dana and April. Mrs. Uhlmeyer is uncertain how her husband obtained the funds for this purchase, but testified the monies were marital funds. In June and August of 1981, she sold the securities, receiving $23,062.50, less a commission of $450.00. Five thousand dollars of the proceeds were used to purchase other stock for the children, $4,000.00 was utilized to purchase a Camero automobile and the remainder was expended for living expenses, food, mortgage payments, clothing and to finance private schooling for the children to maintain their accustomed living style.[1]

---

1. The above figures are based on Mrs. Uhlmeyer's trial testimony. An amended divorce judgment entered May 11, 1982, found that $6,000 of the proceeds were used to purchase replacement securities for the children and $4,100 expended for the vehicle. Defendant's Exhibit C, at para. 25.

Mr. and Mrs. Uhlmeyer were divorced on May 11, 1982. She and the children continued to reside at the family home. Her income consisted of "some" support from her former husband. In November of 1984, by her own testimony, she owed "everybody" and her financial condition was "weak" in that her debts were greater than her income. On November 5, 1984, debtor executed a one-fourth interest in the home to each minor child. Plaintiff's Exhibit 4. She intended the transaction to be a gift and received no consideration for the transfer. However, if this transaction is set aside, she intends to list her children as creditors, since she utilized proceeds from the sale of their stock for living expenses for herself, as well as the children. She estimates the home's value at $95,000 to $100,000 and her interest at one-half that amount, based on the Divorce Court's finding of a joint tenancy. Defendant's Exhibit C, at para. 12. A voluntary liquidation case was filed on January 9, 1985.

### III

Plaintiff argues the transfer of debtor's interest in the realty can be set aside as a fraudulent transfer. 11 U.S.C. § 548(a)(2).

■ The trustee has the burden of proof to establish the conveyance was made under conditions that bring it within § 548, although the burden of going forward with the evidence may shift if the trustee establishes a prima facie case. *In re Butcher*, 51 B.R. 61, 65 (Bankr.E.D.Tenn.1985). A transfer is vulnerable if made within one year of filing for less than a reasonably equivalent consideration if the debtor was or thereby became insolvent. 11 U.S.C. § 548(a)(2)(B)(i).

■ Insolvency is determined by use of § 101(29) of the Code, the so-called balance sheet test: Debtor is insolvent if the sum of her debts is greater than her assets at fair valuation. *In re Willis*, 48 B.R. 295, 301–02 (S.D.Tex.1985). It is not necessary to view financial statements at various intervals during this time to determine that debtor is insolvent. *In re Western World Funding*, 52 B.R. 743, 785 (Bankr.Nev.1985).

■ When a debtor is shown to be insolvent at a date later than the transfer and her financial condition did not change in the interim, earlier insolvency may be inferred. *Matter of Lemanski*, 56 B.R. 981, 989 (Bankr.W.D.Wis.1986), citing *Hassan v. Middlesex County National Bank*, 333 F.2d 838 (1st Cir.), *cert. denied*, 379 U.S. 932, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964).

■ Mrs. Uhlmeyer testified her debts were greater than her income in November, 1984. Two months later, still under pressure from her creditors, she filed a Chapter 7 case listing assets of $118,450 and claims of $182,949. Exhibit 1, at summary of debts and property. Finally, her own testimony indicates no reasonable equivalent value was received as she intended to make a gift to the transferees. Accordingly, an avoidable transfer has been established.

### IV

■ In the alternative, the trustee seeks to set aside the realty conveyance as a preferential transfer. In general, a voidable preference is a transfer by a debtor of her property to a creditor on account of an antecedent debt within 90 days of a bankruptcy filing which allows the transferee to receive more than he would had the debtor been liquidated under Chapter 7 on the day the petition was filed. 11 U.S.C. § 547(b); *In re Tenna Corp.*, CCH BLD ¶ 71,466; 801 F.2d 819 (6th Cir.1986).

■ In determining the amount that the transfer enables the creditor to receive under § 547(b)(5), the creditor is charged with the value of what was transferred plus the additional amount he is entitled to receive in the liquidation. *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936); *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1421 (9th Cir.1985). The net result is that as long as the distribution in bankruptcy is less than one hundred percent, *any* payment on account to an unsecured creditor results in a preference. *Shurtleff, supra*, and cases cited.

■ Lack of good faith is not an element of a preference; the focus is essen-

tially to ensure equality to creditors through scrutiny of transactions occurring before bankruptcy:

> The purpose of the preference section is two-fold, First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 177–78 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6138.

 There is a presumption of insolvency for the 90 day period preceding bankruptcy, 11 U.S.C. § 547(f), which requires the debtor to come forward with evidence to rebut insolvency, although the burden of proof at all times remains on the trustee. Rule 301, *F.R.Ev.*

Debtor defends by claiming she was a constructive trustee or custodian for her children of the stock and proceeds from its sale. Docket No. 17. Since it is undisputed that at least some of the proceeds were utilized to make house payments, debtor's argument is that an interest in the residence was thereby created. Accordingly, she urges plaintiff has failed to establish an antecedent debt for which the transfer was made, one of the essential elements of a preference. 11 U.S.C. § 547(b)(2).

 It is true that for a preference to be voided under § 547, it is essential that the debtor have an interest in the property

transferred so the estate is thereby diminished. *Coral Petroleum v. Banque Paribas-London, et al.,* CCH BLD ¶ 71,434, at 89,809; 797 F.2d 1351, 1355–56 (5th Cir. 1986). However, when estate property is alleged to be held in trust, the burden is on its proponent to establish the trust relationship, identify the trust property and trace the property in the event the trust funds have been mingled with debtor's general property. *Matter of Esgro, Inc.,* 645 F.2d 794, 797 (9th Cir.1981); *Elliott v. Bumb,* 356 F.2d 749, 754 (9th Cir.), *cert. denied,* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966); *In re H & A Construction Co.,* 65 B.R. 213, 14 B.C.D. 1215, 1217 (Bankr.D. Mass.1986), citing *Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962, 969 (5th Cir.1983). This debtor has not done.

 First, in this Circuit, the estate is not automatically deprived of property that state law might find subject to a constructive trust. *In re Lewis W. Shurtleff, Inc., supra,* 778 F.2d at 1419; *In re North American Coin & Currency,* 767 F.2d 1573, 1575 (9th Cir.1985); *Matter of Esgro, Inc., supra,* 645 F.2d at 797–98.

 Here, as in *Shurtleff* and *North American Coin, supra,* there is no prior state court decree imposing such a trust.

Second, Arizona law imposes a constructive trust as an inchoate, equitable remedy "whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress or through any other means which render it unconscionable for the holder of legal title to retain and enjoy its beneficial interest." *In re North American Coin & Currency, supra,* 767 F.2d at 1575, citing *In re Estate of Rose,* 108 Ariz. 101, 104, 493 P.2d 112, 115 (1972). *See also Raestle v. Whitson,* 119 Ariz. 524, 582 P.2d 170 (1978).

No such allegations have been made here, much less proven either by debtor or on behalf of the minor children. Accordingly, even if debtor's testimony of a "gift" is disregarded, a constructive trust will not be imposed to frustrate the strong policy of ratable distribution among all creditors. *Shurtleff, supra,* 778 F.2d at 1420 and cases cited.

## V

Accordingly, I find the transfer of interests in the family residence constitutes a fraudulent transfer pursuant to the Bankruptcy Code. In the alternative, the trustee has established all the elements of a voidable preference. In either instance, the transfer will be set aside. Plaintiff will lodge and serve an appropriate form of judgment.